# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MONONGALIA COUNTY COMMISSION,**
**Employer Below, Petitioner**

**v.) No. 25-ICA-176**      (JCN: 2024016824)

**SKYLER R. CLEMONS,**
**Claimant Below, Respondent**

**FILED**
**October 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Monongalia County Commission ("MCC") appeals the April 9, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Skyler R. Clemons filed a response.[1] MCC did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which rejected the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Clemons was treated by Mark Rogers, M.D., at WVU Urgent Care on August 26, 2023, for left knee pain. Ms. Clemons reported that the onset of her left knee pain was two weeks prior, when she was kicked multiple times in the left knee at work. Ms. Clemons further reported that more recently she had been running on a treadmill and felt something pop in her left knee. Dr. Rogers provided a differential diagnosis of LCL sprain versus ACL sprain versus meniscus tear, and he assessed Ms. Clemons with a sprain of the lateral collateral ligament of the left knee. Dr. Rogers recommended a left knee x-ray, a left knee brace, and a referral to WVU Sports Medicine. An x-ray of Ms. Clemons' left knee performed on August 29, 2023, revealed no evidence of acute fracture or traumatic malalignment of the left knee.

On August 26, 2023, Ms. Clemons completed an Employees' and Physicians' Report of Occupational Injury or Disease, indicating that she sustained a work-related injury on August 17, 2023, when she was kicked in the knee by an inmate while performing her work duties as a process/transport officer for the sheriff's department. The physician's

---

[1] MCC is represented by James W. Heslep, Esq. Ms. Clemons is represented by Natalie J. Sal, Esq.

1

section of the claim application was completed by Dr. Rogers on August 26, 2023, and indicates that Ms. Clemons sustained an occupational injury resulting in a left LCL knee sprain. An undated and unsigned Employers' Report of Occupational Injury or Disease also indicates that Ms. Clemons sustained a left knee sprain on August 17, 2023, when she was kicked in the knee while trying to shackle an inmate.

On September 26, 2023, Ms. Clemons was seen by Nick Zervos, M.D., who assessed Ms. Clemons with a left knee injury, quadriceps tendinitis, and IT band syndrome with patellar tilt. Dr. Zervos recommended physical therapy. Ms. Clemons followed up with Dr. Zervos several times between November 7, 2023, and February 20, 2024. Ms. Clemons indicated that physical therapy had helped, but not resolved, her left knee symptoms, and she continued to have pain in the left knee with activity, especially when trying to run. Ms. Clemons reported that she felt occasional shifting in her left kneecap and pain in the lateral side of the left knee. Dr. Zervos recommended continued therapy and a left knee MRI. An MRI of Ms. Clemons' left knee performed on January 6, 2024, revealed a suspected small longitudinal tear of the posterior horn of the lateral meniscus at the tibial surface.

On January 23, 2024, Ms. Clemons reported that she continued to have pain laterally and around the patellofemoral joint of the left knee. Dr. Zervos assessed Ms. Clemons with left knee patellofemoral and lateral epicondyle pain consistent with IT band syndrome. Dr. Zervos recommended a corticosteroid injection over the lateral epicondylar region. On February 20, 2024, Ms. Clemons reported that the left knee corticosteroid injection she received failed to provide any benefit, and she continued to have pain in the lateral joint line area of the left knee. Dr. Zervos assessed Ms. Clemons with continued left lateral knee pain with possible patellofemoral versus meniscal injury. Because Ms. Clemons had failed to improve with conservative treatment, Dr. Zervos recommended a second opinion to determine whether surgery was indicated.

Ms. Clemons was evaluated by Gregory Purnell, M.D., on February 22, 2024. Ms. Clemons presented with complaints of ongoing left knee pain following extensive conservative treatment. Ms. Clemons reported anterior-based pain, lateral knee pain, that her left knee felt unstable, and that she had difficulty squatting, deep knee bending, and going up and down stairs. Ms. Clemons indicated that she had tried injections and therapy without much improvement in her symptoms. Dr. Purnell assessed Ms. Clemons with left knee patellar instability, left knee lateral patellar tilt, and left knee trochlear dysplasia. Dr. Purnell recommended left knee arthroscopic surgery with limited synovectomy and open medial patellofemoral ligament reconstruction with lateral lengthening.

An email dated March 19, 2024, from "Underwriting" to "PCWebclaims" included a document entitled "New West Virginia Workers' Compensation Report of Injury," which indicated that on that date, Ms. Clemons reported to bookkeeping that she sustained a work injury on August 17, 2023. According to the unknown author of the report, Ms. Clemons'

work injury occurred while en route to the regional jail, and Sergeant Mongold, Deputy Cunningham, and Officer Skavinsky were listed as witnesses to the injury, which occurred when Ms. Clemons was kicked in the left knee while trying to shackle an inmate.

On March 29, 2024, Ms. Clemons underwent arthroscopic surgery on her left knee performed by Dr. Purnell. The operative procedure included chondroplasty of the trochlea, open medial patellofemoral ligament ("MPFL") reconstruction with allograft, and open lateral retinacular lengthening. The post-operative diagnosis was left knee patella instability, left knee lateral patella tilting, left knee trochlear dysplasia, and left knee low grade trochlear chondral lesion. Ms. Clemons was seen by Dr. Purnell for post-operative follow-up on April 9, 2024. Ms. Clemons reported that she was doing well and working in physical therapy. Dr. Purnell assessed Ms. Clemons with post-op left knee arthroscopy with MPFL reconstruction and lateral lengthening. By Diagnosis Update dated May 7, 2024, Dr. Purnell requested that left knee patella instability, left knee trochlear dysplasia, left knee chondral lesion, and left knee patella tilting be added as compensable diagnoses in Ms. Clemons' workers' compensation claim.

On May 10, 2024, Dr. Purnell authored a letter stating:

Skyler has been under my care since 2.22.24. She had surgery on 3.29.24. If she has to return to work the following restrictions will apply: no standing or walking for extended periods of time, no squatting, kneeling or running, she can not lift over 25 lbs, and she can not engage with combative inmates. If she were to be given a desk job she would be able to perform paperwork type duties that do not include her doing any of the above restrictions.

Ms. Clemons submitted a narrative statement regarding her workers' compensation claim dated May 21, 2024. Ms. Clemons stated that on August 11, 2023, she took custody of a combative, intoxicated, female prisoner for transport to the Monongalia County Sheriff's Department. As Ms. Clemons was processing her, the prisoner kicked her violently in the medial aspect of the left knee; then, as Ms. Clemons was escorting the prisoner into the van for transport, the prisoner kicked Ms. Clemons several more times. Ms. Clemons stated that she eventually had to call the Sheriff's Department for assistance with the prisoner, who continued to kick the cage and van door, and four deputies helped her restrain the prisoner, but the prisoner again kicked Ms. Clemons' knee. Ms. Clemons explained that, due to the heightened stress of the situation, she did not immediately realize the severity of her knee injury. Further, Ms. Clemons indicated that the prisoner's assault on her was documented by the deputy supervisor, Sergeant Mongold, and the prisoner was also criminally charged with battery. Ms. Clemons stated that at the end of her shift, she informed the Transport Officer Supervisor of the assault, as required by the Employee Handbook. Ms. Clemons stated that the day after the assault, she had pain and general weakness in her left knee, but her left knee seemed to improve over the next two weeks.

Also in her statement, Ms. Clemons explained that on August 26, 2023, she felt and heard a pop in her left knee while running on a treadmill. She was unable to bear any weight on her left knee after the treadmill incident, and she quickly developed swelling in her left knee. She immediately went to WVU Medicine's Urgent Care for medical care, where the doctor determined that she had sustained a work-related left knee injury from being repeatedly kicked in the left knee two weeks earlier. According to Ms. Clemons, the doctor directed her to complete the patient's portion of a workers' compensation form, and the doctor completed the physician's section of the form and faxed the workers' compensation form directly to the Sheriff's Department. Further, Ms. Clemons said that she went to the station directly from Urgent Care and placed copies of the workers' compensation forms in Supervisor Tennant's mailbox and informed him in writing and by text that the doctor had determined that she had sustained a work-related injury during the prisoner assault on August 11, 2023. When Ms. Clemons asked Supervisor Tennant what else she needed to do in regard to her claim, Ms. Clemons stated that Supervisor Tennant responded, "I don't know."

In her narrative report, Ms. Clemons also stated that when she reported to work on August 28, 2023, she talked about her injury with First Sergeant Ruscello, who told her that she needed to fill out and submit an additional departmental form in order to complete her workers' compensation claim. Ms. Clemons asserts that she completed the departmental paperwork and placed it in Pam Beerbower's mailbox.[2] Ms. Clemons indicated that a few days later, Ms. Beerbower returned the departmental forms to Ms. Clemons and told her that she needed to include the paperwork she received at the doctor's office. Ms. Clemons noted that this was the same information that she had already faxed to the employer and given to Supervisor Tennant on August 26, 2023. Ms. Clemons stated that she retrieved another copy of the medical documentation and returned the medical notes and departmental paperwork to Ms. Beerbower. Ms. Clemons indicated that a few days after that, Ms. Beerbower informed Ms. Clemons that her injury was not a work-related injury, that her claim had been denied, and that she could not appeal the decision.

Ms. Clemons stated in her narrative report that she was never informed that her claim was not submitted to the workers' compensation claim administrator for a decision. Further, Ms. Clemons stated that the rules for a workers' compensation claim were not posted anywhere in the workplace, and there was nothing about the workers' compensation process in the Employee Handbook.

Further, Ms. Clemons stated that on September 16, 2023, she went to Urgent Care after her left knee gave out. Ms. Clemons indicated that she was referred to an orthopedic doctor, whom she saw on September 26, 2023, and was told that she may have sprained her lateral cruciate ligament, and she was advised to stay off work for four days to rest her

---

[2] Ms. Clemons indicated that she presumed that Ms. Beerbower was MCC's responsible Human Resources employee.

knee. Ms. Clemons stated that she gave the doctor's letter to Supervisor Tennant and followed up with a text notification. According to Ms. Clemons' statement, she began physical therapy on October 12, 2023, and after a month of therapy, she began to experience more stability in the left knee, but she continued to have pain. Ms. Clemons further stated that on March 29, 2024, she underwent surgery on her left knee.

On March 21, 2024, the claim administrator issued an order rejecting the claim as untimely filed. Ms. Clemons protested this order. On November 6, 2024, the Board reversed the claim administrator's order rejecting the claim. The Board found that Ms. Clemons' failure to timely submit the WC-1 form was caused, at least in part, by misleading actions on the part of MCC. The Board remanded the claim to the claim administrator with instructions that it "issue a new protestable order accepting or rejecting the claimant's application for benefits based upon the merits of the claim." This Court affirmed the Board's order on June 27, 2025.[3]

On remand, the claim administrator issued an order dated November 26, 2024, which denied Ms. Clemons' claim based upon a finding that the medical records indicated that she felt a pop while using a treadmill nine days after the reported work injury. Ms. Clemons protested this order. On April 9, 2025, the Board reversed the claim administrator's order. The Board found that a preponderance of the evidence establishes that Ms. Clemons sustained an injury to her left knee in the course of and resulting from her employment. MCC now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

---

[3] *See Monongalia Cnty. Comm. v. Clemons*, No. 24-ICA-463, 2025 WL 1784747 (Ct. App. June 27, 2024.)

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, MCC argues that the reliable evidence on record establishes that Ms. Clemons sustained a left knee injury while running on a treadmill on August 26, 2023. MCC further argues that, while Ms. Clemons produced records indicating that an inmate was charged for kicking and scratching her while at work on August 12, 2023, there is no contemporaneous record that she sustained injury at that time. MCC also argues that the Board disregarded texts between Ms. Clemons and her supervisor, indicating that she did not intend to file a claim related to the inmate assaulting her. Finally, MCC argues that the evidence establishes that Ms. Clemons did not seek medical treatment for a left knee injury until she felt a pop while running on a treadmill on August 26, 2023. We disagree.

Three elements must coexist in compensability cases: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. *Barnett v. State Workmen's Compensation Commissioner*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *Jordan v. State Workmen's Compensation Commissioner*, 156 W. Va. 159, 191 S.E.2d 497 (1972).

Here, the Board determined that the preponderance of the evidence establishes that Ms. Clemons sustained an injury to her left knee in the course of and resulting from her employment. The Board found that Ms. Clemons established that she suffered a sprain of the lateral collateral ligament of the left knee as a result of the compensable injury. The Board further found that Dr. Rogers is in the best position to determine if Ms. Clemons' left knee injury was caused by being kicked in the knee or by running on the treadmill.

The Board noted that:

An assault report from the Monongalia Sheriff's Office establishes that the claimant was kicked and scratched by an inmate on August 12, 2023. The claimant did not seek medical treatment or miss work at that time. On August 26, 2023, the claimant was running on a treadmill when she felt something pop in her left knee. She sought medical treatment at Urgent Care and informed Dr. Rogers that she had left knee pain that began two weeks ago. She reported that she was kicked in the left knee two weeks ago at work and that she felt a pop in her left knee while running on a treadmill on August 26, 2023. Dr. Rogers determined that the claimant sustained a left knee LCL sprain, assault. On the claim application, it is noted that this is a direct result of an occupational injury.

6

The Board also found that, based on the post-operative report of Dr. Purnell, Ms. Clemons established that the diagnoses of patella instability, trochlear dysplasia, chondral lesion, and patella tilting are related to the compensable injury.

Upon review, we conclude that the Board was not clearly wrong in finding that Ms. Clemons established that she suffered a sprain of the lateral collateral ligament of the left knee, patella instability, trochlear dysplasia, chondral lesion, and patella tilting as a result of the compensable injury. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order.

We find no merit in MMC's argument that texts between Ms. Clemons and her supervisor establish that she did not intend to file a claim related to the injury at issue. Upon review of the texts, we note that they establish that Ms. Clemons' knee pain began when she was attacked by an inmate on August 12, 2023. Further, on June 27, 2024, this Court affirmed the Board's order finding that Ms. Clemons' employer had misled her regarding the filing of a claim related to the injury at issue.

Accordingly, we affirm the Board's April 9, 2025, order.

Affirmed.

**ISSUED:** October 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

7